UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| YORK MARINE, INC. | ) |
| | ) |
| Plaintiff and Counter-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| M/V *INTREPID*, *in rem*, | )   Civil Action No. 2:15-cv-184-JDL |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| JOHN T. WILSON, *in personam* | ) |
| | ) |
| Co-Defendant and Third-Party Plaintiff. | ) |

## ORDER ON MOTION TO COMPEL

In this admiralty case, York Marine, Inc., a shipyard, seeks to foreclose on a maritime lien against Defendants M/V *Intrepid*, a yacht, *in rem*, and its owner John T. Wilson. *See* ECF No. 9. Wilson has filed a counterclaim and moved to compel York Marine to post countersecurity. ECF No. 14; ECF No. 19. After careful consideration, I deny Wilson's motion.

### I. BACKGROUND

During a storm on June 13, 2014, *Intrepid* sank on its mooring. ECF No. 14 at 5; ECF No. 17 at 3. The parties disagree about the circumstances of the sinking. *See* ECF No. 14 at 4-5; ECF No. 17 at 2-3. Wilson claims that York Marine's faulty swim ladder installation, inappropriate adjustment of bilge pumps, and failure to secure all of *Intrepid*'s hatches caused the vessel to take on water and sink. *See* ECF No. 14

1

at 4-5. York Marine disclaims any responsibility and denies Wilson's factual allegations. *See* ECF No. 17 at 2.

The parties agree that York Marine repaired *Intrepid* after it was salvaged, completing most of the repair work by August 2014. *See* ECF No. 14 at 5; ECF No. 17 at 3. The record reflects that Wilson's insurer paid York Marine a total of $214,805.63 between July 19, 2014 and December 8, 2014 for the repair work. ECF No. 25-4 at 1. In addition to the repair work, York Marine continued to perform other work on *Intrepid* until at least January 22, 2015. *See* ECF No. 18-2 at 40-41.

York Marine commenced this suit, *in rem* against *Intrepid* and *in personam* against Wilson, in May 2015, claiming that a maritime lien of $63,838.39 has accrued on Intrepid because Wilson has not paid for work and necessaries provided by York Marine. *See* ECF No. 9 at 2. To secure its claim, York Marine moved for the issuance of a warrant *in rem* against *Intrepid*, which Magistrate Judge John Nivison granted over Wilson's objection. ECF No. 22. The Clerk of Court subsequently issued a warrant of maritime arrest of *Intrepid*. ECF No. 24.

Wilson has counterclaimed against York Marine, asserting that its work was inadequate and that it charged for work that was never completed. *See* ECF No. 14 at 6-7. The counterclaim seeks recovery on theories of negligence, breach of warranty, fraud, conversion, and violations of the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A *et seq* (2014). ECF No. 14 at 7-10. Wilson's motion to compel seeks to require York Marine to post countersecurity in the amount of $289,805.63. ECF No. 19 at 1. This amount consists of the $214,805.63 Wilson's insurer paid for the repair of the

*Intrepid*, and $75,000 Wilson expects to collect for his attorney's fees pursuant to his Unfair Trade Practices Act claim. ECF No. 19 at 9. In opposing the motion, York Marine contends that countersecurity would not serve the equitable purposes associated with security in actions involving the maritime lien. *See* ECF No. 25 at 4-5.

## II. LEGAL ANALYSIS

### A.   Supplemental Rule E(7)(a) of the Federal Rules of Civil Procedure

Supplemental Rule E(7)(a) of the Federal Rules of Civil Procedure provides that when a plaintiff arrests a defendant's vessel to commence an *in rem* proceeding under Supplemental Rule C, the defendant may seek countersecurity from the plaintiff to secure recovery on a counterclaim:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Supplemental Rule E(7)(a).

As applied here, the Rule's first requirement—that the counterclaim "arises from the transaction or occurrence that is the subject of the original action"—is easily satisfied. York Marine does not oppose Wilson's assertion that the counterclaim arises from the same transaction or occurrence, and involves the same operative facts as York Marine's original claim. *See* ECF No. 25. The Rule's second requirement—that the defendant must have given security for the benefit of the plaintiff—is also

met. York Marine does not dispute that Wilson has given security by virtue of its arrest of the *Intrepid*. *Id.*

## B.   Additional Considerations

Supplemental Rule E(7)(a)'s recognition that a court may deny countersecurity "for cause shown" even if the Rule's two requirements are met reflects the discretion that the District Court has under the rule. *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 403 (5th Cir. 1987) ("Although the language of the rule is automatic it is not absolute, for the original seizing complainant may be excused by the court 'for cause shown.' . . . The determination of 'for cause shown' is relegated to the sound discretion of the district court."). *See also, Afram Lines Int'l, Inc. v. M/V Capetan Yiannis,* 905 F.2d 347, 349 (11th Cir. 1990). In exercising its discretion, the court seeks to place the parties on an equal footing without imposing burdensome costs on the plaintiff that might prevent it from bringing or maintaining its suit. *Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,* 56 F.3d 394, 399-400 (2d Cir. 1995). In striking this balance, the court weighs various factors, including whether the countersecurity claim is frivolous and brought to secure a negotiating advantage over the plaintiff, *Titan Navigation,* 808 F.2d at 404, and whether the imposition of countersecurity would unduly burden the plaintiff, *Result Shipping,* 56 F.3d at 400.

### 1. Frivolousness and the Basis for the Amount of Countersecurity Sought

Wilson's counterclaim is not frivolous on its face. However, the primary support that he offers for his belief that York Marine is responsible for the sinking of the *Intrepid* is the assertion, in a footnote in his motion, that he "has been informed

that [Michael] York damaged the Vessel while he was moving it to the mooring." ECF No. 19 at 2 n.1. Wilson has not otherwise identified the source of this information.

Additionally, Wilson indicated at the hearing that the two bases for his damages will be his loss of use of the *Intrepid* and the diminution of its value. *See also,* ECF No. 33 at 5. However, the $289,805.63 that Wilson seeks bears little relationship to either of these bases. Of the total amount, $214,805.63 represents the sum of what his insurance company paid to York Marine for the repairs made to the *Intrepid*, *see* ECF No. 25 at 10, and the remainder represents $75,000 in attorney's fees that Wilson expects to collect in this action if he succeeds on his Unfair Trade Practices Act claim, ECF No. 19 at 9. Further, it appears at this early stage that the primary party in interest as to the amount of the countersecurity Wilson seeks is his insurer, whom, he acknowledged at the hearing, has a lien for all amounts it has paid. Because the record contains no information from which damages based on the loss of the use of the *Intrepid* or any diminution of value can be forecast, determining those amounts at this stage would be mere guesswork.

### 2. Burden That Countersecurity Will Impose on the Plaintiff

There is no dispute that York Marine is a small operation. It grossed approximately $750,000 in 2014 and employed four people. ECF No. 25 at 4. The $289,805.63 of countersecurity that Wilson seeks is approximately 40 percent of York Marine's annual revenues. *Id.*

Requiring a plaintiff to post countersecurity or face a stay of its case can result in a plaintiff losing its day in court. *See Titan Navigation,* 808 F.2d at 404.

Furthermore, the "purpose of Rule E(7) is to place the parties on equal footing regarding security, not to inhibit the plaintiff's prosecution of its suit as a maritime lien holder." *Goudy & Stevens, Inc. v. Cable Marine, Inc.,* 665 F. Supp. 67, 72 (D. Me. 1987) (quoting *Expert Diesel, Inc. v. Yacht 'Fishin Fool,'* 627 F. Supp. 432, 433 (S.D. Fla. 1986) (quotation marks omitted)).  York Marine argues persuasively that if Wilson is granted the countersecurity he seeks, it will "have the effect of turning York Marine's action to collect its yard bill into a huge current liability, and force it to a ruinous settlement or worse."  ECF No. 25 at 4-5.

### III. CONCLUSION

Considered together, the uncertainty as to the amount of countersecurity, if any, that may be justified, and the real possibility that an award of the countersecurity Wilson seeks would preclude York Marine from pursuing its claim, counsel against a grant of countersecurity in this case.  Having considered all of the relevant factors, I conclude, for cause shown, that it would not be just to grant the countersecurity that Wilson seeks pursuant to Supplemental Rule E(7)(a) and, accordingly, I **DENY** Wilson's motion.

   **SO ORDERED.**

                                                     **/s/ JON D. LEVY**
                                                     **U.S. District Judge**

   **Dated this 18th day of August 2015.**